UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TYRONE ANTHONY WALKER,

               Petitioner,              Case No. 1:20-cv-1220

v.                                 Honorable Paul L. Maloney

GREGORY SKIPPER,

               Respondent.

_____/

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Tyrone Anthony Walker is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. On May 14, 2018, Petitioner pleaded guilty in the Wayne County Circuit Court to second-degree murder, in violation of Mich. Comp. Laws § 750.317, and felony-firearm, second offense, in violation of Mich. Comp. Laws § 750.227b. On May 30, 2018, the court sentenced Petitioner to a prison term of 22 to 60 years on the second-degree murder charge, to be served consecutively to sentence of 5 years on the felony-firearm charge.

On December 16, 2020, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

I.      Did the trial court abuse its discretion when denying Mr. Walker's motion to withdraw his plea, and when it held that his plea was not hastily given or ill-advised by his attorney.

II.     Was Mr. Walker's plea defective for not being fully questioned of the rights he was to be giving up by pleading guilty.

III.    Was Mr. Walker denied his Sixth Amendment right to the effective assistance of counsel when his trial counsel failed to investigate trial defenses.

IV.     Ineffective assistance appellate counsel.

(Pet., ECF No. 1, PageID.7–11.)

Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because grounds I, II, and III are meritless and ground IV is unexhausted and meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are without merit.  Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

Petitioner entered a plea of guilty to second-degree murder and felony-firearm charges.  Such a plea would typically render the underlying facts immaterial.  Nonetheless, Petitioner's contention that the plea was "ill-advised" and that it caused him to improvidently waive certain defenses requires some analysis of the facts as they are revealed through the state court record.

2

With one notable exception, the facts appear in the preliminary examination transcript through the testimony of two witnesses:  Anthony Crews, who drove with the victim to the area where the shooting occurred; and Gary Stewart, Petitioner's brother-in-law, who drove with Petitioner to the area where the shooting occurred. Some facts are not disputed.  The victim and Petitioner both traveled to a house at 5500 Compton in Detroit during the afternoon of January 27, 2018.  The victim traveled with Crews by vehicle to an adjacent street and then walked to the house by himself.  Petitioner traveled in a vehicle driven by Stewart that was parked in front of the house.  Petitioner stepped out of the vehicle as the victim walked up to the vehicle from behind.

Unbeknownst to Stewart, he drove Petitioner to that location so that Petitioner could sell marijuana to the victim.  While Stewart sat in the vehicle, he heard Petitioner shout: "Hey, hey. Stop."  (Prelim. Exam. Tr., ECF No. 11-2, PageID.168.) Stewart looked up, saw the victim running away, with his back turned to Petitioner. Stewart reports that he did not see anything in the victim's hand.  Then, Stewart saw Petitioner begin to chase the victim.  Petitioner pulled out a handgun and started shooting.  Stewart said the victim never turned around.  As they left Stewart's line of sight, he started the vehicle and headed toward his brother-in-law.  Before he caught up to the pair, Petitioner turned back around, ran back to the vehicle, jumped in, and instructed Stewart to drive off.

Stewart dropped off Petitioner, secured Stewart's own wife and children in their home, and proceeded to the nearest Detroit Police facility to report the incident.

Crews did not see Petitioner and the victim meet, nor did he see what precipitated the shooting; but he heard the shots.  He ducked behind his vehicle and then saw the victim fleeing towards him.  Crews ran toward the victim.  He saw an individual running the other way toward a vehicle.  The individual hopped into the vehicle and the vehicle drove away.  Crews could not identify the individual.

Crews found the victim.  He had been shot three times.  Crews held the victim waiting for emergency personnel to arrive.  The victim was transported to a hospital, where he died a few days later.

The only significant additional facts were provided by Petitioner in an affidavit filed with his motion to withdraw plea.  Petitioner swears that he "acted in self-defense"  (Pet'r's Nov. 29, 2018, Aff., ECF No. 11-9, PageID.329), and that "the deceased pulled a gun on me, indicating he was robbing me of the marijuana[, i]t misfired and he snatched the marijuana and ran." (Pet'r's undated[1] Aff., ECF No. 11-9, PageID.331).  Petitioner contends that the circumstances he describes support not only a claim that his shooting of the victim was justified as self-defense, but also a claim that he was justified in shooting a fleeing felon.

---

[1] The affidavit is not dated; however, in the documents supplied by Petitioner, his appellate counsel describes the affidavit as his April 15, 2019, affidavit.  (ECF No. 1-1, PageID.20.)

Petitioner was arraigned on February 4, 2018.  The preliminary examination occurred on March 1, 2018.  A family friend paid to retain attorney Seth Carlson on Petitioner's behalf.  The case proceeded quickly.  Trial was scheduled for May 21.

During April, the retainer for Petitioner's counsel was exhausted and additional payments were not forthcoming.  Counsel moved to withdraw.  Because trial was imminent, the court would not permit counsel to withdraw.

In light of the serious nature of the charge, the judge suggested that the parties explore the possibility of a plea bargain.  She moved back the final conference to May 11 to permit the parties an opportunity to discuss and consider the possibility of a plea.

When the parties returned to court on May 11, counsel had just, the night before, communicated the offer to Petitioner and he was considering it.  The offer required Petitioner to enter a guilty plea to Count 1, but reduced from first-degree to second-degree murder, and Count 2, felony-firearm.  In exchange, the prosecutor would dismiss the charge for felon in possession of a firearm, dismiss any habitual offender enhancement, and agree to a sentence of 25 to 60 years for second-degree murder, to be served consecutively to a sentence of 5 years for felony firearm.  (Hr'g Tr., ECF No. 11-5, PageID.201.)  The offered minimum sentence was below the bottom end of the guidelines minimum range.  (*Id*.)  The judge gave Petitioner the weekend to consider the offer and scheduled a new conference for May 14.

When the parties reconvened on May 14, the offer had been modified to reduce the minimum end of the second-degree murder sentence from 25 to 22 years. Petitioner accepted that offer.  The judge reviewed with Petitioner the settlement offer and notice of acceptance that Petitioner had signed.  (Plea Tr., ECF No. 11-6, PageID.208–210.)  By signing that document Petitioner acknowledged that he would be giving up his trial rights to a jury, to be presumed innocent, to have his guilt proved beyond a reasonable doubt, to confront witnesses, to question witnesses, to compel witnesses to appear, to remain silent without that silence being used against him, and to testify.  ((Offer and Acceptance, ECF No. 11-9, PageID.519.)  Petitioner also acknowledged that he was giving up any claim that his plea was the result of promises or threats not disclosed to the court or that it was not his choice to enter the plea. (*Id.*)  Petitioner also acknowledged that he was giving up his appeal as of right.  (*Id.*)

The trial judge then elicited a factual basis for Petitioner's plea.  Petitioner acknowledged that he was at the scene, he was armed with a gun, he had no right to carry a gun, that he fired the gun at the victim, that he fired the gun knowing that it was likely that someone could be killed, and that the victim was harmed as a result and died as a result.  (Plea Tr., ECF No. 11-6, PageID.210–213.)  On May 30, 2018, the court sentenced Petitioner consistently with the agreement.

Petitioner asked the court to appoint appellate counsel.  On November 29, 2018, Petitioner, with the assistance of appointed appellate counsel, moved to withdraw his plea for the reasons set forth in habeas grounds I, II, and III above.  The court denied the motion by order entered April 5, 2019.

Petitioner sought leave to appeal his conviction and sentence and the court's denial of his motion to withdraw plea.  By order entered June 14, 2019, the Michigan Court of Appeals denied leave "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 11-9, PageID.251.)  Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  He raised the three issues he had raised in the Michigan Court of Appeals and added one new issue: Petitioner's trial and appellate counsel had failed to subject the prosecution's case to meaningful adversarial testing.[2]  By order entered December 23, 2019, the Michigan Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 11-10, PageID.559.)  This petition followed.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the

---

[2] Petitioner's contentions with regard to trial counsel's failures were principally the ones he had already identified; but his claims that appellate counsel failed him were entirely new.

7

state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529

8

U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   The validity of Petitioner's plea

Petitioner's habeas grounds focus on the validity of his plea.  "It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  On the other hand, a plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice

among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970).

### A.    Michigan Court Rule 6.302

Woven through every part of Petitioner's argument regarding the validity of his plea are claims that the trial court failed to comply with the state court rules regarding the taking of pleas.  Michigan Court Rule 6.302 imposes very specific requirements for the taking of pleas to ensure that pleas are understanding, knowing, and accurate.

While states are free to adopt procedural rules that include specific requirements for plea-taking—for example, requiring an inquiry into the factual basis for a plea, as Michigan has done in Mich. Ct. R. 6.302—the Federal Constitution does not mandate them to do so.  *See Alford*, 400 U.S. at 37-38; *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975).  Particularly in the context of federal habeas review, where the propriety of state court determinations are gauged by law clearly established by the United States Supreme Court, a state's attempt to define the boundaries of a voluntary or knowing plea does not guide this Court's analysis. Compliance with the specific requirements of Michigan Court Rule 6.302, if those requirements vary from or expand upon clearly established federal law, is purely a state law issue.

11

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a).  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether state court proceedings were proper under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id*. at 67–68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  The court of appeals' concluded that Petitioner's challenge to the plea proceedings under Michigan Court Rule 6.302 had no merit.  That conclusion binds this Court.

**B.    Clearly established federal law regarding plea validity**

This Court is not bound by the state court's determination that Petitioner's general due process challenges to his plea had no merit; but the Court owes that determination AEDPA deference.  Clearly established federal law holds that to find that a guilty plea is constitutionally valid, several requirements must be met.

**1.    Competence**

The defendant pleading guilty must be competent.  *See Brady*, 397 U.S. at 756. Petitioner does not contend he is incompetent; but he does suggest that he was wholly unfamiliar with pretrial proceedings.  (Pet'r's Supp. Appl. for Leave to Appeal, ECF No. 11-10, PageID.679) ("[D]efendant . . . has never been through a critical stage of

12

pretrial process . . . ."). Petitioner cites no clearly established federal law that supports a claim that someone new to pretrial processes may, for that reason, challenge a plea, and the undersigned is aware of no authority that would support that claim.

Moreover, the claim that Petitioner is new to pretrial processes is plainly false. On February 4, 2002, Petitioner entered a guilty plea in the Wayne County Circuit Court to a charge of delivery or manufacture of less than 50 grams of a controlled substance. *See* https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=81488 (visited July 23, 2021). On June 28, 2002, Petitioner entered a guilty plea in the Wayne County Circuit Court to charges of third-degree fleeing a police officer and receiving and concealing stolen property. *See* https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=77271 (visited July 23, 2021). On January 28, 2003, Petitioner entered a guilty plea in the Wayne County Circuit Court to a charge of felony-firearm. *See* https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=89371 (visited July 23, 2021). On September 3, 2009, Petitioner entered a guilty plea in the Wayne County Circuit Court to a charge of possession of a firearm by a felon. *See* https://cmspublic.3rdcc.org/CaseDetail.aspx?CaseID=1166207 (visited July 23, 2021). Essentially, since Petitioner turned 19-years-old, he has had repeated exposure to Wayne County Circuit Court pretrial processes. There is no support for any claim that Petitioner's plea might be invalid because of incompetency or even a lack of familiarity.

### 2. Notice of the charges

A pleader must have notice of the nature of the charges against him. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Petitioner suggests that he did not have adequate notice of the charges against him.

A "plea cannot stand as an intelligent admission of guilt" if the pleader "has . . . an incomplete understanding of the charge . . . ." *Henderson*, 426 U.S. at 645 n.13. Petitioner contends that his understanding of the second-degree murder charge was incomplete because neither the trial court nor counsel ever advised him that an element of the offense was that the killing occurred "without justification or excuse." Petitioner claims further that he did not understand that the prosecutor would have to prove that he intended the death of the victim. Each claim is considered below.

### a. justification or excuse

Petitioner contends that his shooting of the victim was justified or excused under two doctrines: self-defense and fleeing-felon.[3] But Petitioner implicitly

---

[3] Although the doctrine of self-defense might fall into the realm of common knowledge, the "fleeing felon" defense does not. The Michigan courts have described the defense as follows: "A private person, acting on his own account, is justified in using physical force upon another person when and to the extent that he reasonably believes it necessary to effect an arrest or to prevent the escape from custody of an arrested person who he reasonably believes has committed a felony and who in fact has committed that felony." *People v. Whitty*, 292 N.W.2d 214, 219 (Mich. Ct. App. 1980). The Michigan Supreme Court granted leave to appeal in the cause of *People v. Couch*, 461 N.W.2d 683, 688 (Mich. 1990), for the express purpose of considering whether the common-law rule announced in *Whitty* survived the United States Supreme Court's decision in *Tennessee v. Garner*, 471 U.S. 1 (1985). The *Couch* Court concluded *Whitty*'s statement of the common-law rule was not impacted by *Garner*.

indicates that he was not aware that his conduct might have been so justified or excused at the time he entered his plea.  Petitioner's appellate counsel argued that "without justification or excuse" was an element of the offense of second-degree murder.[4]  The trial court concluded it was not:

> What makes you think that without justification or excuse is an element of second degree murder?  What makes you say that?  What do you rely upon other than the fourth prong of a jury instruction that the use notes clearly say is only to be given to the jury under circumstances if the facts and circumstances of the case warrant it?

(Mot. Hr'g Tr., ECF No. 11-8, PageID.237.)   The trial court explained that "justification or excuse," such as the self-defense claim that Petitioner raised in his argument to withdraw his plea, is a defense:

---

Neither the Michigan Supreme Court nor the Michigan legislature has acted to change the "fleeing felon" defense after *Couch*.

[4] Petitioner raised this argument in the Michigan courts as part of his claim that the trial court was required, under Mich. Ct. R. 6.302, to establish a factual basis for the claim.  *See, e.g.*, (Pet'r's Appl. for Leave to Appeal, ECF No. 11-9, PageID.265–270) (arguing that due process requires establishing a factual basis for a guilty plea as provided in the predecessor rule to Mich. Ct. R. 6.302 and spelled out in *In re Guilty Plea Cases*, 235 N.W.2d 132 (Mich. 1975)).  Peeling away that state law requirement, which is not relevant for purposes of habeas review, still leaves the due process requirement that the pleader must be aware of the facts that the prosecutor must prove to intelligently determine whether a guilty plea is the appropriate course of action.  It is noteworthy that the underlying premise of Petitioner's claim—that the trial court must explain the elements of the offense (and defenses) to ensure the plea is knowing—is expressly **not** required by the court rule.  Mich. Ct. R. 6.302(B) ("the court must advise the defendant . . . of the . . . the name of the offense to which the defendant is pleading; the court is not obliged to explain the elements of the offense, or possible defenses . . . .").

Well, when the defendant is sworn and placed under oath and indicates that he's prepared to accept a guilty plea to a crime of murder in the second degree, doesn't that in and of itself suggest that he's no longer asserting any defenses?  I mean, why would the Court need to further inquire whether or not the defendant is raising a defense to a crime that he has sworn, under oath, that he is prepared to plead guilty to?

(*Id*., PageID.238–239.)  The trial court denied relief.  The court of appeals then denied leave to appeal concluding that Petitioner's renewed argument—that "without justification or excuse" was an element, that he was unaware of that element, and that his ignorance regarding that element of second-degree murder rendered his plea unknowing—was without merit.

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia,* 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  Although the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense, *California v. Trombetta*, 467 U.S. 479, 485 (1984), it is also the prerogative of the state to define whether or not a defense applies to a particular crime.  *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define

the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .").  The state court's determination that "without justification or excuse" is not an element of the crime of second-degree murder, such that Petitioner need not be aware of the "element" to knowingly enter his plea, is axiomatically correct.

The undersigned notes that there is certainly reason to be confused as to whether "without justification or excuse" is an element of second-degree murder in Michigan.  Petitioner's appellate counsel cited *People v. Mayhew*, 600 N.W.2d 370, 379 (Mich. Ct. App. 1999), for the proposition that "without justification or excuse" is an element of second-degree murder.  *Mayhew* cited *People v. Goecke*, 579 N.W.2d 868 (Mich. 1998); *Goecke* cited *People v. Bailey*, 549 N.W.2d 325 (Mich. 1996); and *Bailey* cited *People v. Dykhouse*, 345 N.W.2d 150 (Mich. 1984).  The listing in *Dykhouse* is taken from a three-justice dissent.  *Dykhouse*, 345 N.W.2d at 508–509 ("As refined by this Court, the elements of common-law murder are: (1) a death, (2) caused by an act of the defendant, (3) absent circumstances of justification, excuse, or mitigation, (4) done with an intent to kill, an intent to inflict great bodily harm, or an intent to create a very high risk of death with the knowledge that the act will probably cause death or great bodily harm.") (footnotes omitted).[5]

---

[5] Prior to *Dykhouse*, although state courts sometimes mentioned "without justification or excuse" in jury instructions or in describing the common-law crime of murder, they did not say that the absence of justification or excuse was an "element" of murder.

17

The elements as enumerated in *Dykhouse* are not statutory elements.  Section 750.316 of the Michigan Compiled Laws states that three types of conduct constitute first-degree murder:

> (a) Murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing.

> (b) Murder committed in the perpetration of, or attempt to perpetrate [certain listed felonies].

> (c) A murder of a peace officer or a corrections officer committed while the peace officer or corrections officer is lawfully engaged in the performance of any of his or her duties as a peace officer or corrections officer, knowing that the peace officer or corrections officer is a peace officer or corrections officer engaged in the performance of his or her duty as a peace officer or corrections officer.

Mich. Comp. Laws § 750.316.  All other kinds of murder are second-degree murder. Mich. Comp. Laws § 750.317.  "Murder," however, is not defined in the Michigan statutes.

The Michigan Supreme Court has explained that "murder," as used in the statute, is defined by the common law at the time of codification.  *People v. Riddle*, 649 N.W.2d 30, 37–38 (Mich. 2002).  The *Riddle* court explained:  "[W]here [a legislature] borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed."  *Id*. at 38.  The "cluster of ideas" attached to murder also includes the common-law defenses.  *Id*.  Thus, the concept of murder as contemplated by the Michigan statute is animated by the common law.  It is noteworthy that the United

18

States Supreme Court in *In re Winship,* 397 U.S. 358 (1970), *Mullaney v. Wilbur,* 421 U.S. 684 (1975), and *Patterson v. New York*, 432 U.S. 197 (1977), also reviewed the common-law—the same common-law considered by the *Dykhouse* court—to determine whether "the absence of self-defense" is one of the facts necessary to constitute the crime. The United States Supreme Court concluded that it was not.

When the Michigan Supreme Court sets out the "elements" in *Dykhouse*, it is not clear whether the court is defining "the facts that constitute the crime" or a broader "cluster of ideas," including the facts that constitute the crime and the common-law defenses that excuse or justify the otherwise criminal behavior. Particularly because Michigan puts the burden of proving the absence of those defenses on the prosecution,[6] *Dykhouse* could be describing that which the prosecutor

---

[6] "Michigan law has always placed the burden of disproving self-defense on the state whenever a defendant raised the issue." *Hooper v. Perini*, 641 F.2d 445, 446 n.1 (6th Cir. 1981). The terms "burden of proof"—or of "disproof" with regard to self-defense— can be misleading.  As the Supreme Court noted in *Mullaney*, 421 U.S. at 684, "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence."  *Id.* at 695 n. 20. Generally, the constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt."  There are times, however, where the constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses.  It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.  Using those references, with regard to affirmative defenses in Michigan, the "burden of proof"—the burden of producing some probative evidence—is on the defendant, but the burden of persuasion is on the prosecution, and the standard of persuasion is beyond a reasonable doubt.

must prove, even if those elements of proof include facts that go beyond those that constitute the crime.[7]

Moreover, "without justification or excuse is not included as an "element" in many definitions of murder before *Dykhouse* and even in the last few years. The Michigan Supreme Court's recent statements of the elements of murder do not include the absence of excuse or justification: the "elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v. Oros*, 917 N.W.2d 559, 565 (Mich. 2018).[8] "[S]econd degree murder is first-degree murder minus premeditation or the enumerated [predicate] felony." *Id*. at 565 n.4 (quoting *People v. Blevins*, 886 N.W.2d 456, 466 (Mich. App. 2016) (quoting *People v. Carter*, 236 N.W.2d 500, 502 (Mich. 1975)).

Although it is not clear whether "without justification or excuse" is an element of second-degree murder, it is clear that the Michigan courts have defined self-defense and "fleeing felon" as affirmative defenses. *See People v. Dupree*, 788 N.W.2d 399, 405 (Mich. 2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the

---

[7] The Sixth Circuit hinted at that possibility that it might be difficult to distinguish between an element and the absence of a defense in the context of a statute-defined crime in *Carter v. Jago*, 637 F.2d 449, 454 (6th Cir. 1980) ("*Patterson* makes clear that the applicability of the reasonable doubt standard is dependent upon how the State defines the offense that is charged in any given case; unless expressly defined by statute, material elements do not include the nonexistence of a fact which, if proven, would constitute a statutory defense."). It would be even more difficult to make the distinction in a judicial statement of the common law.

[8] The *Oros* statement of the elements tracks back to *People v. Bowman*, 656 N.W.2d 835, 841 (Mich. App. 2003).

crime.' " *People v. Reese*, 815 N.W.2d 85,101 n.76 (Mich. 2012) (quoting *Dupree*, 788 N.W.2d at 405 n.11);[9] *see also People v. Young*, No. 231707, 2003 WL 21186629, at *5 (Mich. Ct. App. May 20, 2003) ("[B]ecause the evidence did not support the fleeing-felon defense, the trial court properly refused to provide a jury instruction on that **affirmative defense**.") (emphasis added, citations omitted).  The fact that the defendant has the initial burden of production on the issue is a testament to its different status.  Once the defendant has met that burden, Michigan puts the burden on the prosecutor to prove the absence of self-defense or fleeing-felon beyond a reasonable doubt; but, that does not change its status.   The state could, constitutionally, require the defendant to prove self-defense (or presumably "fleeing-felon") by a preponderance of the evidence.  *Martin v. Ohio*, 480 U.S. 228 (1987).[10]

By asserting an affirmative defense, a defendant is admitting the same thing that a pleader must acknowledge when entering a plea of guilty: that he does not factually challenge that the criminal act took place.  Asserting the affirmative defense simply claims that the otherwise criminal act was excused or justified under the law. It is not necessary that Petitioner have "notice" of those potential defenses in the same way he must have notice of the charges for his plea to be valid.  The admission

---

[9] There is a difference, therefore, between an affirmative defense that might justify or excuse a crime but does not negate an element of a crime, and "factual" mitigating factors that do negate an element of a crime, as demonstrated in *Sherman v. Davids,* No. 1:19-cv-840, 2020 WL 132376, at *7–9 (W.D. Mich. Jan. 13, 2020).  In *Sherman,* the Petitioner claimed not only self-defense, but also provocation.  Provocation negates the "malice" element; therefore, it is not an affirmative defense.

[10] In *Martin*, the Supreme Court also rejected the notion that self-defense "negates" the elements of murder, at least under Ohio law.

of guilt relinquishes potential defenses in the same way it relinquishes antecedent constitutional violations. *United States v. Broce*, 488 U.S. 563, 573–574 (1989) ("Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, bur from the admissions necessarily made upon entry of a voluntary plea of guilty."). The waiver does not immunize a plea from challenge where counsel provides deficient advice regarding an affirmative defense, but it does limit challenges based on potential affirmative defenses to ineffective assistance claims. *Id.* at 574 ("A failure by counsel to provide advice [regarding the range of potential defenses] may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea.").[11]

The principle that a pleader need not be provided notice of potential affirmative defenses is well-developed in federal prosecutions.[12] The Fifth Circuit Court of Appeals analysis in *United States v. Ortiz*, 927 F.3d 868 (5th Cir. 2019) is illustrative:

> This court has not yet decided whether a district court errs in accepting a guilty plea when the factual basis contains an affirmative defense that does not negate any offense element.
>
> Our cases have generally approached post-plea sufficiency challenges by comparing the factual basis to the offense elements. We

---

[11] Petitioner's parallel challenge to his plea based on ineffective assistance of counsel is addressed below.

[12] The post-plea inquiry in federal prosecutions involves not only the requirements of due process, but also the requirements of Federal Rule of Criminal Procedure 11 regarding the taking of pleas. Certainly, however, a practice permitted to stand as appropriate under Fed. R. Crim. P. 11 would also, necessarily, not violate the requirements of due process.

have not taken it upon ourselves, nor required district courts, to scan for possible affirmative defenses. *See, e.g., United States v. Crain*, 877 F.3d 637, 645 (5th Cir. 2017) ("To determine whether a defendant's factual basis is sufficient to support his guilty plea, the district court must examine each element of the offense charged.") (cleaned up); *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992) ("The record must reveal specific factual allegations supporting each element of the offense."); *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2001) (directing trial courts to compare "(1) the conduct to which the defendant admits with (2) the elements of the offense charged in the indictment or information").

In *United States v. Smith*, the Second Circuit explicitly endorsed that approach:

> [O]nce a defendant has admitted to all the elements of an offense, the district court is not required to exercise discretion under [Rule 11] to reopen its inquiry into the factual basis for the guilty plea in order to explore a possible defense of justification, at least where justification negates none of the offense elements.

160 F.3d 117, 123 (2d Cir. 1998).

Other circuits appear to do the same. *See Dismuke v. United States*, 864 F.2d 106, 107 (11th Cir. 1989) ("Nothing in Rule 11 requires the trial judge to inform the defendant of every possible defense he may have."); *United States v. Luna-Munoz*, 234 F. App'x 762 (9th Cir. 2007) ("Rule 11 of the Federal Rules of Criminal Procedure does not require a district court to inform the defendant of potential justification defenses—or to rule them out—before accepting a guilty plea."); *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988) ("The defendant's position in this case would go too far toward converting plea hearings into law school seminars on possible defenses and mini-trials on questions of factual guilt."); *see also* 1A Charles Alan Wright, et al., Federal Practice and Procedure § 179 (4th ed. 2011) ("There need not be a factual basis for something that is not an element of the offense charged.")

We follow their lead. Even if the factual basis here revealed that Ortiz's possession were justified, it nonetheless established that his conduct satisfied every element of the offense. Accordingly, the district court did not err in accepting the plea.

*Ortiz*, 927 F.3d at 877–878.  These cases are not "clearly established federal law." But they do bolster the claim that *Broce*, which is clearly established federal law, forecloses Petitioner's notice argument regarding affirmative defenses here.

### b.    intent

Petitioner filed a supplemental brief as part of his application for leave to appeal to the Michigan Supreme Court.  (Pet'r's Supp. Br., ECF No. 11-10, PageID.675–686.)  In that brief, for the first time, Petitioner raised a claim that he was not on notice regarding "the requisite intent to cause death at the time of the killing . . . ."  (*Id.*, PageID.681.)

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *Id.* at 844, 848; *see also Picard v. Connor*, 404 U.S. 270, 275–77 (1971); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *O'Sullivan*, 526 U.S. at 845; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

24

Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Petitioner's appellate brief indicates that he did not raise in the Michigan Court of Appeals the ineffective assistance of counsel issues related to the lack of notice regarding the intent element.

Raising the issue for the first time in the Michigan Supreme Court does not suffice.  Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation."  *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Applying *Castille*, the Sixth Circuit repeatedly has recognized that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals but raises it for the first time on discretionary appeal to the state's highest court.  *See Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011); *Thompson v. Bell*, 580 F.3d 423, 438 (6th Cir. 2009); *Warlick v. Romanowski*, 367 F. App'x 634, 643 (6th Cir. 2010); *Granger v. Hurt*, 215 F. App'x 485, 491 (6th Cir. 2007); *Dunbar v. Pitcher*, No. 98-2068, 2000 WL 179026, at *1 (6th Cir. Feb. 9, 2000); *Miller v. Parker*, No. 99-5007, 1999 WL 1282436, at *2 (6th Cir. Dec. 27, 1999); *Troutman v. Turner*, No. 95-3597, 1995 WL 728182, at *2 (6th Cir. Dec. 7, 1995); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *accord Parkhurst v. Shillinger*, 128 F.3d 1366, 1368–70 (10th Cir. 1997); *Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir. 1994); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990); *but see Ashbaugh v. Gundy*, 244 F. App'x 715, 717 (6th Cir. 2007) (declining to reach question of whether a claim raised for the first time in an application for leave to appeal to the Michigan Supreme Court is exhausted).  Unless

the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts.  Petitioner's application for leave to appeal was denied, and, thus, the issue was not reviewed.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented.  28 U.S.C. § 2254(c).  Petitioner has at least one available procedure by which to raise the issues he has failed to present to both Michigan appellate courts.  He may file a motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.*  Under Michigan law, one such motion may be filed after August 1, 1995.  Mich. Ct. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion.

Although Petitioner's failure to exhaust the claim that his plea is invalid because he was not provided notice regarding the intent element prevents this Court from granting habeas relief, it does not foreclose denying such relief on the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that a district court should deny a stay where unexhausted claims are meritless because, under 28 U.S.C. § 2254(b)(2) such claims may be properly denied); *Smith v. Nagy*, 962 F.3d 192, 204 (6th Cir. 2020) (court rejected unexhausted claim on the merits citing 28 U.S.C. § 2254(b)(2)); *Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (explaining that a district court may "ignore the exhaustion requirement altogether and *deny* the petition if *none* of the petitioner's claims has

26

any merit") (emphasis in original).  As set forth fully below, Petitioner's notice claim regarding the intent element has no merit; accordingly, the Court will consider, and deny relief on, Petitioner's unexhausted claim.

Petitioner's argument regarding intent is limited to the fragment of a sentence quoted in part above:  "defendant was led to believe that a person could be convicted of second-degree murder under state law without possessing the requisite intent to cause death at the time of the killing . . . .")  (Pet'r's Supp. Br., ECF No. 11-10, PageID.681.)  But the premise of Petitioner's argument—that second-degree murder requires an intent to cause death—is simply wrong.  The intent element of second-degree murder is captured in the requirement that the death be caused with "malice."  "[M]alice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm."  *People v. Aaron*, 299 N.W.2d 304, 326 (Mich. 1980).  So there is no requirement that the person accused of second-degree murder intend to cause death.

Moreover, at the plea hearing, Petitioner acknowledged that he fired his weapon at the victim "with reckless disregard for that fact it could harm [him]."  (Plea Tr., ECF No. 11-6, PageID.212.)  Petitioner also admitted that when he shot his weapon, he knew "it was likely that someone could be killed or die as a result . . . ."  (*Id.*)  Petitioner's claim that he did not understand the intent requirement for second-degree murder is belied by his admissions at the plea hearing.  As the Sixth Circuit Court of Appeals recognized in *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986),

27

"the defendant is bound by his statements in response to that court's inquiry [during the plea colloquy.]"  *Id.* at 90 (internal quotes and citation omitted).   His claim is meritless.

### 3.    Voluntary plea

The plea must also be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state- induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). Petitioner does not argue that his plea was induced by threats or that his will was otherwise overborne.

### 4.    Understanding the consequences

The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Petitioner's attack on this requirement centers on his claims under Mich. Ct. R. 6.302, that the court did not specifically review the rights Petitioner was waiving on the record, but instead referred to, and categorically discussed, the rights waived as reflected on the prosecutor's offer and Petitioner's signed acceptance.

Petitioner's claims under the rule are not cognizable on habeas review. Once that layer of objection is removed, it is apparent that Petitioner understood the consequences of his plea. He acknowledged in writing and on the record the list of rights he was giving up and his sentences. This claim too, therefore, is without merit.

### 5.    Advised by competent counsel

Finally, Petitioner claims that his attorney rendered ineffective assistance when advising Petitioner regarding the plea. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance

29

was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner claims that counsel failed to investigate Petitioner's affirmative defenses of self-defense and fleeing felon and failed to adequately advise Petitioner regarding the viability of the defenses as well. Petitioner's claims do not find support in the record. There is nothing in the record that shows that counsel did not investigate self-defense or fleeing-felon as potential defenses. The record is silent with regard to counsel's efforts.

Moreover, although Petitioner reported after his plea that "the deceased pulled a gun on me, indicating he was robbing me of the marijuana, it misfired and he snatched the marijuana and ran," (Pet'r's undated Affid., ECF No. 1-1, PageID.41), he never avers that he gave that information to his attorney. His affidavit says that he told his attorney that, based on the victim's text messages, it was apparent that

30

the victim intended to rob Petitioner, but Petitioner never indicates that he told his trial counsel about the gun or the misfire.

Even if Petitioner told his counsel about the gun and the misfire, counsel's recommendation of the plea, despite the possible affirmative defenses, would not have been ineffective assistance because the suggested defenses were not supported by the evidence.  Petitioner's brother-in-law testified that he did not see anything in the victim's hand.  The brother-in-law also testified that the victim was turned away from Petitioner in full flight, and the victim never turned back, when Petitioner took chase and pulled his gun and started firing at the victim's back.  Moreover, there is no indication that the victim possessed a gun or that a gun was found at the scene.  Other than Petitioner's self-serving statement, there is nothing to serve as a foundation or corroboration for a self-defense claim.

Petitioner's fleeing-felon defense fares no better.  Petitioner cannot possibly expect that a jury would believe he intended to effect an arrest of the victim or that Petitioner was attempting to prevent the victim's escape from a lawful arrest. Moreover, unless the jury believed the Petitioner's uncorroborated testimony regarding the presence of a gun, it is not clear that the victim committed a felony.  On the other hand, it is a given that Petitioner committed a felony by simply possessing the weapon he used to shoot the victim.  And even if the victim did commit a felony, given the policy underpinnings of the fleeing-felon defense, it is difficult to imagine that the Michigan courts would apply it to permit the last felon to turn away from a criminal transaction to open fire on the other participants.

Weighed against these anemic defenses, the plea bargain offered Petitioner a chance to avoid a "life without parole" sentence for first-degree murder—which would have been a likely verdict in light of the brother-in-law's testimony regarding the circumstances of the shooting, and a mandatory minimum sentence of 25 years as a fourth habitual offender, and a guidelines minimum range of 26 years, 3 months to 43 years, 9 months. Under the circumstances, recommending the plea might have been the only way to render effective assistance.

Even if counsel's conduct might be deficient in some respect, Petitioner must also demonstrate prejudice. *See Hill*, 474 U.S. at 59 ("In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").[13] Moreover, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative

---

[13] The same analysis would apply if the plea were defective for some reason other than ineffective assistance. In *Ruelas v. Wolfenbarger*, 580 F.3d 403, 410 (6th Cir. 2009), the Sixth Circuit Court of Appeals concluded that a determination that a guilty plea was involuntary is subject to harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), where the Supreme Court held that entitlement to habeas relief requires showing that any constitutional error "had substantial and injurious effect or influence" on conviction and that the error resulted in "actual prejudice" Id. at (quotation marks omitted). Applying the "substantial and injurious effect or influence" standard in the plea context—for a violation of Rule 11, not of due process, but the same standard—the Supreme Court has stated that the defendant who seeks relief "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004).

defense likely would have succeeded at trial." *Id.*  Because Petitioner's proposed self-defense claim is factually unsupported and his fleeing-felon claim is just absurd, Petitioner cannot show that his affirmative defenses likely would have succeeded at trial.  His claim fails on both prongs of the *Strickland* analysis.

For all of the reasons stated above, Petitioner has not shown that the state court's rejection of his plea-validity claims are contrary to, or an unreasonable application of, clearly established federal law.  Therefore, he is not entitled to habeas relief.

## IV.    Ineffective assistance of appellate counsel

Petitioner also challenges the effectiveness of the assistance provided by his appellate counsel.  He raised that claim for the first time in the Michigan Supreme Court.  That claim, therefore, is also unexhausted.  Nonetheless, the undersigned will address and deny the claim because it is meritless.

The *Strickland* standard applies to ineffective assistance claims raised against appellate counsel, but the different setting on appeal changes the measure of deficient performance.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 689.  As the Supreme Court

has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 288.

The arguments that Petitioner claims his appellate counsel failed to effectively raise are the same arguments that have been identified as meritless above. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Accordingly, Petitioner is not entitled to habeas relief on this claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

34

claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, for the same reasons I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I also conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court certify that an appeal would not be taken in good faith.


Dated:  August 11, 2021                              /s/ Phillip J. Green
                                                     PHILLIP J. GREEN
                                                     United States Magistrate Judge


## NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).